Good morning. My name is Mark Larson. I represent Dirk Christianson, the appellate here. I come to you from my offices in Wyanotte, North Dakota. I digress, I guess, only to tell you that Montana is famous for registering motorhomes to avoid property taxes. I probably shouldn't mention that, but I couldn't help myself. Dirk Christianson found himself in the McLean County Jail after a domestic dispute with his longtime girlfriend, a former band member, and he ended up in jail at the end of 2018, where he couldn't make bail on a fairly minor case. He spent some considerable time in the jail, and well, there's an argument that he received lots of different types of medical care along the way. One of the things I think that happened with that medical care is one of the doctors who looked at him, and I don't know if the jailers were aware of this, suggested that he was a malingerer. And that means to me that the jailers felt he was the boy who cried wolf, and as a consequence, they determined that his care didn't need to meet any significant standard. You say you're not sure that's in the record? I mean, I don't know if that's the best point to leave with. Yeah, they even cite the fact that he was a malingerer in one of their briefs, Your Honor. You say that again? I'm sorry. The malingering issue is cited in their brief, that one of the doctors reported that he felt he was a malingerer. I see. And I think that affected the way people looked at him when he begged for care. About the 3rd of April, he was noted to have a severe fever. He went to see a family nurse practitioner, Benning, at the clinic. She determined it was just a, perhaps a flu. Sent him home without blood tests. Now, she testified that she didn't think blood tests were necessary, but it's interesting to me because he had had a meeting with another one of her members on March 19th who had ordered blood tests to be taken on April 8th. The April 3rd is a Wednesday, April 8th is a Monday. I don't know why there weren't any blood tests taken because Benning testified that she wanted to look at prior records to get the CBC, which is a white blood cell count, which would be consistent with fever. All of the testimony in this point says that his fever had probably started by April 2nd. The fever that, not the fever, but the infection that led to sepsis. Okay? And when he was finally diagnosed and found to be crawling in his cell on April 6th, he gets taken to the hospital finally after poorly being checked along the way without much concern for whether the fever was worsening or not. And off he goes to the hospital. And the sepsis, which is what would have showed, I think, with the blood tests, became necrotizing fasciitis. Now, there's a lot of discussion that nobody can tell if it's necrotizing fasciitis, but you can tell if it's sepsis. You can tell if it's an infection. You can tell if that infection will lead to something more serious. And nothing was followed to protect him with that. I want to first delve slightly into an issue that I have with the dismissal by the court of the underlying malpractice action for failure to file an affidavit in a timely fashion. The court relied on the Wiesel case to argue... Well, counsel, are you aware of the Supreme Court's decision in Burke v. Choi on January 20th of this year, January 20th of this year? U.S.? Yeah, United States Supreme Court. No, I am not. Okay. Go ahead and proceed with your argument. How's that going to hurt me? No. It may help you. Go ahead. We'll talk to the other side about it as far as I'm concerned. If you don't know about it, we shouldn't talk about it. We don't hear much about the Supreme Court in North Dakota. I hear you. I'm sorry. That was a smart remark. No, that's okay. I apologize. My problem with Wiesel is if we go back to when I first started practicing, North Dakota adopted the federal rules, said they're wonderful. But one of the big differences between the two Rule 3s is North Dakota recognizes services the summons as commencing the case. The federal rule says you got to file the case. And I think it has to do with the fact that North Dakota, a lot of cases never see the light of the courtroom. You know, you're going to have smaller collection cases and so forth, so they don't want to do that. And that's why 280146 says a case is that you have to serve an affidavit within three months of commencing the case. And I don't know why the Wiesel Court uses the term filed because it differs from the statute. And so I believe that if you rely on North Dakota law, which says commencement is service, and I think I pointed out in my brief that I believe service demonstrates that it occurred under the waiver system, which was on filing on April 30th. So it's a confusing group of cases, but I think those cases demonstrate where we need to go with that case. I further would point to the court that these folks in the jail didn't follow up. They didn't follow up. They didn't care. And Nurse Benning ... Counsel, your expert said if they just followed Benning's plan, it was fine, correct? Didn't your expert say that? Benning's plan was okay if they had just followed it? If they had followed it, yes. Right. Right. And is she a defendant in this case? Yes. How can she be a defendant if they say she made a plan and if everybody followed it, it would have been okay? She had an opportunity to even diagnose the fever was actually sepsis, and she had that opportunity when she failed to follow through with a blood test, and she saw this man on April 3rd. She thought she would defer to an April 8th blood test that was to be ordered by her lead home, who is the other FNP at this facility. But what's fascinating to me too, and it's cited in one of the briefs of the appellees, is that one of their staff members was supposed to follow up on, think, on Friday the 5th to see where he was at. They never followed up there, and that's a deficiency in the clinic's care. And I believe that leaves Benning still liable because she didn't properly supervise, even though if she had a plan, which was to watch this man and take the proper temperatures, she was still responsible to do a little bit of backgrounding and never did. Well, she doesn't sound indifferent, does she? You know, the federal standard is indifference of a very high degree. Well, it's a high standard. But, you know, what's indifferent, I think, is almost, it seems to me, to be a jury question, no matter what you do. You get the opportunity to test her. I mean, she's squeezing this guy in on an emergency basis late in the afternoon after being called early in the morning to see him. He has to come in with a jailer. And that's what I just don't understand, is why not take a blood test when the guy is there? They have this contract. You'd think they'd try to make it more convenient for everybody. Just draw some blood, check it out, and then instead of deferring until April 8th, fail the call and let this man die, suffer and lose his leg. She did order a couple of tests, right? So you're just carving out the blood test. Wasn't there a urine test and a flu test? Yes. So you're carving out just the blood test as being evidence of indifference? Yes. Didn't go far enough. And, you know, and is it convenient to her? Some of the record will show that their blood testing gets a little funky because they actually send it from Washburn, North Dakota, which is about 50, 60 miles from Bismarck, North Dakota, to get processed. And so I don't know if that was what caused her to delay or stop, but it, you know, just didn't seem to care and didn't seem to follow through. And I think that's a jury question, Your Honor. That's what I've got for now. I guess I have a little extra time unless you have more for me. Very well. Thank you for your argument. Let's see. Mr. Bakke, are you going to argue first? All right. We'll hear from you now. May it please the Court. My name is Grant Bakke and I represent the Appalachian-McLean County Jerry Kurzman and Nurse Ashley Brossart. I'd like to first respond to a suggestion made by my friend on the other side that Dirk Christensen was labeled a malingerer and subsequently treated as such by jail staff thereafter. This malingerer record that I believe my friend was referring to comes from a December 2018 document from treatment he received in Bismarck from a medical doctor. This was the third day in a row that Mr. Christensen had been transported from McLean County to Bismarck to receive medical care. And at all three visits, no significant treatment was—or significant changes in his treatment were provided. And there's a brief reference that the doctor on the third day thought perhaps that Mr. Christensen had been malingering. There's no evidence in this case that any of the jailers ever saw that medical record, were aware of any malingering by Mr. Christensen at any time. It would be—it wouldn't be normal for them to all be aware of that. And there's similarly no evidence whatsoever that even if the jailers did know about this document which referenced malingering, that they treated him any differently than they do any other inmate or took any action by it. In this case, going through the appeal that Mr. Christensen has made here, he appeals the district court's order partially granting the county's motion to dismiss. And that's the order that dismissed the Minnell claim. There's just no policy that Mr. Christensen has identified. There's no custom, no unwritten rule at the jail that he has said even exists, let alone presented evidence of, to sustain his Minnell claim. And he has not presented any argument to the contrary on appeal. Basically, his position as I understand it is that there was a policy of not obtaining the proper records from the nurse practitioner who provided outside care for the jail. And I believe that's based on some records that were improperly produced that pertain to a different patient accidentally during discovery in this case. Counsel, are you the subject of the medical malpractice claim? There's a medical malpractice claim in this case? Your Honor, no. That's what I thought. Proceed. That's what I was just saying. Yes. That's what I thought. Proceed. What about the order regarding the John Doe defendants? That's within the county, correct? Yes, Your Honor. Why was the grant of summary judgment appropriate? Why wouldn't you just dismiss those? It seems to me there's you've got nothing in front of the court has nothing in front of him. Why wouldn't that be a dismissal instead of a grant of summary judgment? So what happened here is the district court dismissed Mr. Christensen's motion for leave to amend his complaint to identify those 10 John Does. And that took place, that motion was submitted after all the defendants in the case had moved for summary judgment. I think that as the district court then denied the motion for leave to amend the complaint and then I think for purposes of finality. Well, isn't there a pending, another pending case here? It's sort of unusual. Isn't there another case that's pending that actually has these John Does named as defendants? That's correct, Your Honor. It's the same 10 John Does, same verbatim allegations as Mr. Christensen tried to make in his motion. Well, and if they're the same allegations, wouldn't a grant of summary judgment against them here have a negative impact on the second case? Yes, and that is what we argued in our motion to dismiss in the second case. So you think a grant of summary judgment was appropriate here because of timing? Yes, Your Honor, because the appellant knew about the identities of the 10 John Does that he seeks to add as defendants for a period of years. Oh, I meant the timing of the district court, of the proceedings in this case. In other words, you said, well, everybody had filed for summary judgment, the district court was ready to rule on the summary judgment motions. John Does, he wasn't permitted to amend, so let's just include them in summary judgment. That's what I heard your answer to be, and why summary judgment rather than dismissal? So we did move for summary judgment in favor of the John Does as well, as well as resisting the motion for leave to amend the complaint. The reason that summary dismissal of the John Does was appropriate in this case is that they were never identified and they were... So summary dismissal, not summary judgment? Summary judgment, I apologize. In the second case that Your Honor was referring to, that has recently been dismissed on a motion to dismiss a 12B motion within the last two weeks, I believe. On what ground? Res judicata collateral estoppel, and essentially that it was an attempted do-over of the same claims that were not allowed to be brought here. How are you and Mr. Sand dividing the 15 minutes? I am going to do 10 and Mr. Sand is going to do 5. We have some questions for him, so go ahead and finish what you want to say.  The last point that I'd like to make is that there was no pushback from Mr. Christensen in response to our argument that the county defendants are entitled to qualified immunity. None at all in the district court. We provided evidence and argument of why we were entitled to qualified immunity and there was no response whatsoever at the summary judgment stage, and I think that alone is just positive. So with that, I'll leave it unless there are any further questions. Very well. Thank you for your argument. Thank you. Good morning, Your Honor, and may it please the Court, my name is Benjamin Sand. I represent Nurse Practitioner Carrie Benning in the Washburn Clinic in this matter. As the Court has detailed, there's a medical malpractice claim against Nurse Benning and the Washburn Clinic that was dismissed for failure to timely serve an expert affidavit as required under North Dakota law within three months of commencement. Counsel, are you familiar with the Burke v. Shorter? I am familiar with Burke v. Shorter. Okay. So we've got to reverse, right? I don't think so. Oh, tell me have not. I understand it's a problematic case for expert affidavits in these situations going forward, but in this case, the plaintiff has never argued that 2801.46 displaces the Federal Rule of Civil Procedure. There's no analysis requested under Shady Grove, no argument that this affidavit requirement does not apply. That's been undisputed going forward. The issue on this appeal and the issue in the argument is that there's a disagreement as to how we conclude when an action is commenced or when that three-month deadline is to start running. So you're saying he's waived the Burke v. Troy argument?  That's correct. I see. Yes. And in terms of a potential 28-day letter, there's no argument, there's no citation in any of the briefing or even the argument presented today. Well, you didn't present it to us either, Counsel. Correct. There's nothing — yes, Your Honor. Because there's nothing in the record to tie it to, the argument's never been raised. And so, yes, we would move on. Do you think it's a plain error? No. The issue has never been presented, Your Honor. No, Counsel. A plain error doesn't require it to be presented. Is this a case? It's a civil case.  Is this a rare civil case where plain error is required? I don't, Your Honor, because there are distinctions between the Delaware statute and the North Dakota statute that weren't explored. Do you think the Supreme Court relied on the technicalities of the Delaware law when they declared what the federal rule meant? Well, there is a portion in Burke v. Troy in which the Court entertains the alternative argument from defendants that there were opportunities for extensions for filing the medical affidavit. And the Supreme Court didn't seem to take kindly to those arguments either. But there is a substantial difference between the two statutes. The Delaware statute requires an affidavit accompany a complaint. Complaint can be filed. I think half the states do, don't they, Counsel? A large number of states require it to accompany the petition or complaint. Yes. Right? But not North Dakota. Okay. But it's a grounds for dismissal. Just the failure to attach the affidavit is grounds for dismissal of the case in North Dakota. A failure to serve an affidavit within three months of filing the complaint. The importance of the distinction there is we would argue there isn't a strong or any collision between Rule 8 and the expert affidavit statute. Do you think that's supportable by the Supreme Court's case? Can you say that again, Your Honor? Do you think that that position is supportable in light of Burke v. Troy? I think it's an uphill battle given what I would call dicta in Burke v. Troy where the court contemplates the alternative argument presented by the defendants that because there could be extensions of the deadline to file this expert affidavit that there isn't a collision between Rule 8 and the affidavit requirement. The court itself in Burke v. Troy goes on to say that seems to not make a difference because they're not sure what rule of civil procedure you would move under to get the  Your point on waiver is that this argument was not raised in the district court or on appeal. Correct. That's correct. So do you dispute that this court can raise the issue sua sponte based on an intervening Supreme Court decision? I don't. I think it's up to this court's discretion, but given the waiver, I don't think it would be appropriate. What discretion does the court have to raise it sua sponte? I am unaware of a specific case, Your Honor, but. Okay. I thought you might. Well, all right. I don't think the court should. Again, I think it's been completely waived, and under the requirements of 28J, if you're going to supplement the record, you need to cite to an argument or a citation to which it applies. And again, plaintiff here has never argued that 2801.46 displaces a federal rule of civil procedure. Put another way, we have all been operating under the law of the case that this requirement applies to the plaintiff. It's just a question as to when he's required to timely serve the expert affidavit. And on that, your position is Rule 3 governs. Correct. I would phrase it this way. Wiesel v. St. Alexius sets a bright-line rule. Pardon me? This Court's precedent in Wiesel v. St. Alexius sets a bright-line rule. Yeah. Two critical dates. Three months after the filing of the complaint, and then when the motion to dismiss is filed. If there's no request for an extension for good cause within those three months, and no expert affidavit has been served, there is no discretion the district court must dismiss without prejudice. And, Counsel, so I'm clear. The State court case has been dismissed, and you did send that to us, and it's without prejudice, but now they're beyond the statute of limitations. At State court, do you believe? Correct, yes. So, functionally, with prejudice. I mean, they cannot bring the claim because, due to their failure to timely serve the expert affidavit in the State court case. And so, in light of Burke v. Choi and what this Court may do if it wants to apply that here, there are issues of claim splitting, res judicata, things to be explored below. Again, I would emphasize that it has never been at issue whether this statute conflicts with the federal rule of civil procedure. If I could briefly, on the 1983 action, with what limited time I have, our brief makes it clear this is, at best, a negligent diagnosis case or a misdiagnosis. The gist of it is, with a drop in blood pressure, the likes of which Mr. Christensen had between March 19th and April 3rd, and his complaints of fever, the plaintiff says she should have conducted some blood tests. Ms. Banning said that in her medical judgment, she didn't delay testing. She, in her review of the records, substantial loss of weight, prescription of blood pressure medication, and Lasix with diuretic. His symptoms, his lowered blood pressure, were all tied to that course of treatment. And so, what she did was order that the fever be monitored, and if he gets worse, he report back, and that blood pressure be taken twice daily after the appointment. Mr. Christensen's blood pressure stabilized, but unfortunately, he popped a fever of 104 degrees the next day, and maintained a fever of over 100 degrees for days after that. And as stated by plaintiff's expert in his report, I believe it was referred to earlier, Nurse Benning gave clear instructions to follow up. The staff at McLean County had clear instructions, as detailed in the note from F&P Benning, to bring him back for evaluation, but these were overlooked. And had he been brought back, the appropriate test would have been conducted. More likely than not, he wouldn't have suffered the damages alleged. That's not deliberate indifference. I don't think that's even negligence. Thank you. Very well. Thank you for your argument. We'll hear rebuttal, Mr. Larson. Thank you. If I catch the wind on our problem with Shady Grove, I sort of actually elected not to bring in Shady Grove in those arguments. I'm not immune to that knowledge. I would tell the court that after a year-long, several-year hiatus, I've got two appeals pending in this court right now, one of which is Tom Varey v. NOB Process 24-3565. Judge Kelly has that case, or is on that panel. That's got some Shady Grove arguments with respect to North Dakota law, and I felt that this case was much more clear when the case was commenced under North Dakota law, and as a consequence, went down that route. I apologize for my ignorance of the federal, of the Supreme Court case. Anyway, what I want to say is that medical professionals' care reaches deliberate indifference when they ignore red flags that make risk of a serious condition obvious. Nurse Benning did not just misdiagnose a cold. She ignored a 100-point crash and systolic blood pressure, 22-pound weight loss. Symptoms our experts are classic indicators of sepsis. Furthermore, a subjective state of mind is evidenced by her April 10th addenda, added only after she learned the appellant was in the hospital, and if you'll recall, there were text messages back, well, that's where he needed to be. Well, if he needed to be at the time they were sending these text messages, they had nothing that would have suggested that he shouldn't have been there earlier. The jailers simply provided Tylenol and cold packs, failed to follow up with what should have been done, and I think with those thoughts in mind, it's clear that this case deserves to be sent back to the district court. Thank you. Very well. Thank you for your argument. Thank you to all counsel. The case is submitted and the court will file a decision in due course.